The Chancellor.
This is a bill, filed by the executors of the will of Edward D. Warbasse, deceased, to settle their accounts in this court, and for directions as to the distribution of the estate in their hands. The most important question arises in regard to the legacy to the wife of the testator — whether it is a charge upon the land ?
The will directs, in the first place, the payment of all debts out of the estate, as soon as conveniently can be after the testator’s decease. It then proceeds as follows: “ Item. I give and devise' to my beloved wife Rachael the sum of one thousand five hundred to he in lieu of her *465 dower at law in my estate real and personal, and to be paid to lier by my executors in one year after the decease of my father Joseph Warbasse, or her leaving the premises whore we now dwell as her place of residence which ever shall first happen. I also give and bequeath to my said wife Eachael the use and possession of the whole of my personal property not necessary for the payment of my debts and funeral expenses, which are first to be paid therefrom, and my real estate during the lifetime of my father, the said Joseph Warbasse, upon the condition that she allow and provide for him a good and comfortable support and maintenance in food, clothing, washing, and lodging, with the use of the room he has heretofore occupied in the dwelling house on the premises, and also that she occupy and have the care and oversight of the same herself, or for such time as she may choose to remain and take chai’ge of the same after my decease.
Item. It is my will that so much of my personal property as may be required for the payment of debts and expenses be sold by my executors as soon as convenient after my decease, and the residue whenever my wife shall elect to abandon the possession thereof with the premises where we now dwell.
Item. Whenever my said wife shall elect to giye up the occupancy of the farm and premises whereon we now live, it is my will and request, that my brother in law, John Snyder, occupy the same and provide for my said father as above specified, and I hereby give and devise to him the use and occupation of my said farm and real estate, during the lifetime of my said father, upon the condition that he take care of and provide for him as above specified.
Item. After the decease of my said father, Joseph Warbasse, it is my will, and I do order and direct that all my estate real and personal be sold for the best price the same will command upon the usual terms of selling like property, and after satisfying and discharging all charges and *466 lawful claims upon the same, the net balance to be disposed of as follows.”
The testator then gives to Martha Clark two hundred dollars out of the “ net balance” of his estate. He then gives “ all the residue of the net balance” of his estate to his brother and sisters and their children.
I think it is very clear that it was the intention of the testator, that the legacy of fifteen hundred dollars to his wife should be paid at all events, and that he charged jt upon his whole estate. Taking the whole will together, the impression made upon the mind of a cursory reader is that such was the testator’s intention, and a more careful examination into the particulars of the will strengthens such impression.
The legacy of $1500 is given to his wife in lieu of dower. This, of itself, is not sufficient to charge the legacy upon the land, but it has some weight in looking for the intention of the testator. In the case of Paxson v. Potts’s administrators (2 G. C. R. 313), no consideration was given to this circumstance, because the legacy given to the wife was coupled with a devise of real estate. The Chancellor properly remarks, that although the legacy may fail, the court cannot say but that the value of the house and lot which is devised is not equal in value to the wife’s dower at common law in the whole premises of which her husband died seized. Here the testator gives his wife the legacy of $1500, as the sole consideration for her right of dower in his estate; and it was the only provision he made for her in lieu of that right. This raises an equity to have that consideration paid out of the estate, and is some evidence that the testator so intended it, unless he has made a disposition of it not consistent with such intention. In other words, if the general tenor of the will favors that intention, the court should enforce the equity. In connection with this, it is an important consideration that the personal estate of the testator was inconsiderable in amount — not sufficient to pay his debts. If this legacy *467 is not a charge upon the land, then the testator made no provision for his wife. It is said it was optional with herself whether to take the legacy or her dower. This is true. But the testator intended her to take it, and her refusal to do so would have defeated a cherished object of the testator as to a provision which he had made for his father. The very fact, that it was at her option to take the provision, or not, strengthens the argument, that the intention of the testator was that it should be paid. If it was a charge upon the land, it enabled the executors to carry out the whole will of the testator. If it was not, and the widow was driven to her legal right, it disconcerted the salutary arrangement which the testator had made in the disposition of his property.
Again. The legacy was but a fair equivalent for the widow’s legal right of dower in the land of which her husband died seized. This appears from the price at which the real estate of the testator was sold. In searching for the intention of the testator, we are not confined to the will itself, but may look at the situation of the property disposed of) and the persons taking it. Van Winkle v. Van Houten et al. (2 G. C. R. 186) and cases there died. The considerations mentioned, of themselves, would have induced me to declare the legacy a charge upon the laud. That the legacy is given in lieu of dower, and is the only consideration for its relinquishment; that such relinquishment was necessary in order to enable the executors to carry the will into effect, and to secure a cherished object of the testator, marked out in his will; that there was no personal estate to pay the legacy, and that the legacy was but an equivalent for the widow’s legal right in the land, are sufficient consideratons to satisfy the court that it was the testator’s intention that his whole estate should be bound for the legacy.
In addition to the particulars referred to, there is another clause in the will which places the intention of the testator beyond all doubt. It makes the matter so clear *468 to my own mind, that I should have satisfied myself by a mere reference to it, as the evidence of the testator’s intention to make the legacy a charge upon the land, had it not have been for the earnestness and ingenuity which the eminent counsel concerned manifested in denying such an inference.
After giving this legacy, and making no other gift, nor any devise of real estate, the testator orders and directs all his estate, real and personal, to be sold, and after satisfying and discharging all charges and lawful claims upon the same, the net balance to be disposed of, &c. We have here the real estate converted into personal, both blended together, making one common fund — that common fund expressly made chargeable to satisfy and discharge all charges and lawful claims upon it, and then only the net balance disposed of. The testator could only have made his intention clearer by express language — “ I charge my land with the payment of the legacy and all my debts.”
The blending the real and personal estate together, and making of them one common fund, is an evidence of the intention of the testator to make his real estate equally chargeable with his debts and legacies as the personal. Adams and others v. Bracket, executor, 5 Metcalf 282; Tracy v. Tracy, 15 Barb. 505, and cases cited. Here is the whole estate embraced in the residuary clause, with nothing else to be taken of the real estate to constitute a residue except this legacy of $1500. This is to be taken as some evidence of the intention of the testator. Van Winkle v. Van Winkle, 2 G. C. R. 173; Lewis v. Darling, 16 Howard U. S. 1.
In addition, we have the declaration of the testator that this common fund shall satisfy all charges and lawful claims upon it. This fund was constituted of the personal, as well as the real estate. The personal was the primary fund to pay the legacy. It was combined with the real, and together they were made, by the testator, a common fund to satisfy all charges and legal claims upon *469 either of them. If the testator did not mean this common fund to pay the legacy, then he meant nothing by this clause. He had directed his executors to pay his debts as the first thing, and to pay them as soon as they conveniently could after his death, and for that purpose to sell his personal property. The legacy he directed to be paid in one year after the decease of his father, or in one year after his wife left the premises, which had been devised to her for life, if she occupied them fulfilling certain conditions which the testator had imposed. When the testator inserted the clause we are considering, it is reasonable to suppose, if he had anything on his mind, it was this legacy; for, according to the provisions of his will, and the disposition he had made of his whole estate, he could hardly suppose there was anything else which remained to be satisfied out of the common fund. When he declared, therefore, that this fund should satisfy and discharge all charges and lawful claims upon it, it was his intention that this legacy should be satisfied out of it. The legacy of $1500 is a charge upon the land, and the land must make good any deficiency in the personal estate to pay it.
In the will, the word dollars was omitted after the words “fifteen hundred.” This is a mistake of the scrivener. The intention of the testator is apparent upon the face of the will, and the omission may be supplied by a proper construction of its terms. The court has jurisdiction to correct the mistake, and supply the omission with the appropriate word to signify the intention of the testator. 1 Story’s Eq. Jur. § 179.
It is insisted that John Snyder, one of the complainants, assumed the payment of this legacy, and that, by an agreement he made with the widow, he discharged the estate of its payment. It is further insisted that he actually paid the legacy, and that where an executor elects to pay a legacy, before ascertaining whether the personal estate is sufficient to pay it, the legacy being once dis *470 charged, the executor cannot resort to the real estate to reimburse himself, although, by the will, the legacy is made a charge on the real estate. The executors were directed, by the will, to pay the legacy in one year after the decease of the testator’s father, or the widow’s leaving the premises. John Snyder, one of the executors, paid the legacy at the expiration of one year after the widow left the premises. At the time, he had no funds in hand for the purpose. He did but anticipate the funds which, by the directions of the will, he was to receive. The fund which was made liable for this legacy is now in his hands for distribution. The objection amounts to this only— that the executor ought not to be permitted to reimburse himself, because he anticipated the time when, by law, he could have been compelled to pay the legacy. There certainly is nothing in the objection.
Hid John Snyder make any agreement with the widow which, in equity, discharges the estate from the payment of this legacy ?
On the 28th of February, 1846, John Snyder and Rachael Warbasse, the widow, entered into an agreement under seal. This agreement sets out the provisions of the will relating to the terms upon which the widow was to enjoy the use of the real and personal estate, and the fact of her possession under the will. Rachael Warbasse agrees to deliver up to John Snyder all her right to the use of the said real estate and personal property, upon condition that said Snyder, as one of the executors of the said will, should deliver to said Rachael all of the goods, wares, household articles, and stock that the said Rachael took to her deceased husband at their marriage, or its equivalent in value, the same to be and remain her own individual property free from all claim of creditors and legatees under the will. Upon the delivery of said property to her, said Rachael agreed to deliver to said Snyder her right to the use of the said real estate and the balance of the personal not before specified. On the first of April following, which was 1846, the widow delivered up the *471 farm to Snyder, and lie gave her the personal property, as agreed between them. The value of this personal property amounted to about $175. At the foot of the above agreement, and of the same date, is another agreement, signed and sealed, respectively, by the said Snyder and Rachael, to the effect, that the first agreement should in nowise be taken as affecting or impairing the right of the said Rachael to her legacy under the will, which she thereby accepts in lieu of dower, and which is to be paid her, according to said will, one year after she delivers up possession of the farm, and which the said Snyder thereby agrees to pay to her or her lawful representatives.
This agreement does not, in any way, relieve the estate from the payment of the legacy, nor is there any equity arising under that agreement which should relieve the estate from the payment of the legacy, and transfer the burthen to John Snyder. It is said that Snyder acted in violation of his trust and to the prejudice of the estate, and that he derived, under that agreement, a valuable consideration equivalent to the legacy. If this is so, then equity will hold him accountable; for, as trustee, he must account to his cestui que trust for all benefits or profits which he may have derived from any speculation in the trust property. What consideration did he derive from Rachael Warbasse ? She gave him possession of the farm. But this was in accordance with the will of the testator. The testator declared, that if his wife should elect to give up the occupancy of the farm, it was his will and request that his brother in law, John Snyder, should occupy the same, and provide for his father. The consideration, which John Snyder gave for the possession of the farm, was the support of the testator’s father while he lived. This was the consideration named by the testator, and there is no allegation that the duty was not faithfully performed by John Snyder. It is said that the estate was prejudiced in this way. If the widow had continued in possession of the farm, then the legacy of $1500 would not *472 have been payable until the 25th of February, 1854, one year after the testator’s father’s death. But if she left the fai’m, then the legacy was to be payable one year after she left it. She left it, under the agreement, on the first of April, 1847, and thereby the legacy became payable on the first of April, 1848. It is said, therefore, that in consequence of the agreement which John Snyder made with Rachael "Warbasse, the estate is compelled to pay interest on the legacy from the first of April, 1848, to the twenty-fifth of February, 1854. This is true. And if it had been shown that John Snyder induced Rachael Warbasse to make the agreement with a view to his own advantage, there might be some propriety in charging John Snyder with this interest. But there is no evidence that the agreement was the result of any solicitation on the part of John Snyder, unless such an inference could be drawn from the fact, which appears in the agreement, that Snyder agreed to give her absolutely certain personal property, which, by the will, she was only entitled to the use of while she continued in possession of the farm. Any inference prejudicial to the complainant, Snyder, which might be drawn from the fact alluded to, is rebutted by an agreement, or release, executed by all the persons, except one, interested in the residuary estate under the will. This agreement bears the same date of the agreement between Snyder and Rachael Warbasse. It recites the provisions of the will in reference to the farm, and uses this language: “ the said widow being now desirous to leave and abandon the property.” It then declares that the said parties thereto, “ for the consideration of one dollar, do bargain, sell, release, and quit-claim unto the said Rachael Warbasse, &c., all their right, title, and interest whatever of, in, and to the articles mentioned in the following list, or inventory.” Then follows an inventory of the same property, of which John Snyder had agreed to guaranty the right and possession to the said Rachael, under the agreement before referred to.
*473 It is a fair inference, to be deduced from these agreements, and from the facts connected with them, that the agreement between Snyder and the widow was a part of a family arrangement, to which they all assented, in order the better to carry out the wishes of the testator in providing for a proper support of his father during his life. I think the will of the testator is faithfully carried out hy paying tills legacy, and the interest which John Snyder has paid upon it, out of the funds in the hands of the executors.
These views dispose of another point made by the defendants. They insist that the executors should he charged with the personal property which John Snyder gave up to the widow. Those, of the-residuary legatees, who executed the release of that property to the widow, have certainly no claim upon the executors to account for it. The children of James Warbasse did not join in the release. The complainants must account to them for one-fifth of the value of the property.
There remains hut one other question of controversy between the parties. At the testator’s death, James IP. Warbasse was largely indebted to the estate. He was insolvent, and the debts could not he collected hy the executors. By the will, he is a residuary legatee, and entitled to one-fifth of the residuary estate. He has died since the testator, and his children represent him in this suit. The complainants claim the right to deduct, from the distributive share to which James F. Warbasse’s children are entitled under the will, the debt due from their father to the testator.
A gift of a legacy by a creditor to his debtor does not operate as a release or extinguishment of the debt due from the legatee, when the securities of the debt remain uncancelled, and the intention of the testator to annul the debt is not clear. 2 Roper on Legacies 62 to 66. In Wilmot v. Woodhouse (4 B. C. C. R. 230), the Lord Chancellor says— “ a gift of a legacy may certainly he so framed as to he a release of a demand, but it must be clear.” And *474 see, also, Clark v. Bogardus, 12 Wend. 69; Williams v. Crary, 5 Cow. 368; 4 Wend. 449.
In the distribution, may the executors deduct from the share of the children of James F. Warbasse the amount of the debt which he owed the estate at the testator’s death? In Jeffs v. Wood (2 P. W. 128), Wood sued Jeffs, as the executor of his father, in the spiritual court, to secure a legacy of £500. Jeffs, the executor, then brought his bill, in the Court of Chancery, against Wood, and he, becoming a bankrupt against the assignees under the commission, to have an allowance made him out of the legacy for the money which Wood owed to the testator. The assignees brought a cross-bill for the legacy. The master of the rolls decreed the allowance, and made these remarks: “Now, in the present case, the defendants’, the legatees, demand is in respect of the testator’s assets, without which the executor is not liable: and it is very just and equitable for the executor to say, that the defend•ant, the legatee, .has so much of the assets already in his own hands, and consequently is satisfied pro tanto; and forasmuch as it is probable the spiritual court will not allow of this discount, therefore the suit here is very proper, in order to have such an allowance. So that if the legatee himself had brought this bill for his legacy, it had been very proper for the executor to have insisted that the legatee, owing so much to the testator, and having already so much in his hands of the testator’s assets, was consequently paid so far.” In Ranking v. Barnard and others (5 Mad. R. 28), a legacy of £1000 had been left to the wife of John Ansley, who was largely indebted to the testatrix. John Ansley became a bankrupt, and his wife afterwards died without having asserted any claim in respect to. this legacy. The assignees of J. A. brought suit for the legacy. It was held that the executors of the testatrix were entitled to retain the legacy in part discharge of the debt due to the testatrix. The Vice Chancellor said, if there had been no bankruptcy, the executors might *475 have retained the legacy, and that the assignees could only stand in the situation of the bankrupt; that it was clear that, as against the husband, the executors of the testatrix would have had a right to satisfy the legacy by writing off’ so much of the debt due from the husband to the estate of the testatrix. In Richards v. Richards and others (4 Eng. Con. Exch. Rep. 219; 9 Price 230,) it was held, that a legatee having become a bankrupt since the death of the testator, and a larger sum of money being due from him to the estate, his assignees were held not entitled to take any part of the personal estate bequeathed to the legatee. The case of Courtenay v. Williams (25 Eng. Ch. R., 3 Hare 539,) affirms the same principle in its broadest application. It was there held that the executor might retain so much of the legacy as was sufficient to satisfy a debt due from the legatee to the testator at the time of his death, although the remedy of such debt was, at the time of the death of the testator, barred by the statute of limitations. See, also, 1 Roper on Legacies 608. I find nothing in the authorities (2 Story’s R. § 1431, Green v. Darling; 5 Mason’s, 201; How v. Wood, 2 Sumner 409; Gordon v. Lewis 633), cited by the defendants’ counsel, conflicting with the other authorites to which I have referred. The executors are entitled to make the deduction in the distribution of the assets in their hands.